IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 1:20-cr-131 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MARK WOODS | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

### July 8, 2021

Presently pending before the Court is Defendant Mark Woods's Motion to Suppress and Request for an Evidentiary Hearing (the "Motion"). (Doc. 31). We convened a hearing on April 19, 2021, and, following post-hearing submissions, the matter has now been fully briefed, (Docs. 32, 46, 47). For the reasons that follow, the Motion shall be denied.

### I. FACTUAL BACKGROUND

On June 17, 2020, Defendant Woods was charged in a three-count Indictment with the following: possession with intent to distribute cocaine base, heroin, and fentanyl in violation of 21 U.S.C. §841 (Count I); possession of a firearm during, in relation to, and in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c) (Count II); and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) (Count III). (Doc. 1). Those charges arose from an encounter with the York City Police

1

Department on July 30, 2019 at approximately 1:25 a.m. At that time, Officer Mike Irvin was on duty in his patrol vehicle, traveling north on S. Belvidere Avenue in York, Pennsylvania. (Doc. 45 at 12:13-13:2). We take the following from Officer Irvin's testimony during the evidentiary hearing in this matter. (*See* Doc. 45).

As he drove past a private parking lot owned by local business Helf the Carpetman, Officer Irvin testified that he saw a vehicle parked in the lot with its parking lights on. (*Id.* at 13:2-6). Officer Irvin also testified that he could see a person in the driver's seat "laying back." (*Id.* at 13:9-10). At this juncture, Officer Irvin decided to turn his patrol vehicle around and "investigate what was going on with the person who had been laid back in the car seat." (*Id.* at 13:12-13). He did so, he avers, based upon the fact that the business was closed and had clear signage indicating that the parking lot was for the use of Helf the Carpetman patrons only. (*Id.* at 13:18-15:10). Officer Irvin also noted that it was close to last call at a nearby bar and he knew the area had a high prevalence of drug trafficking and overdoses. (*Id.*).

As Officer Irvin turned his vehicle around and began traveling south on S. Belvidere Avenue, a man crossed the street in front of him, traveling towards the Helf the Carpetman parking lot on foot. (*Id.* at 15:19-22). At this juncture, Officer Irvin testifies that he became concerned that he was witnessing a potential drug

sale based upon his knowledge that the area was known for high levels of drug trafficking. (*Id.* at 15:21-16:1).

Again, Officer Irvin turned his car around and began traveling north on S. Belvidere Street. (*Id.* at 16:6-7). After executing this second turn, Officer Irvin "saw the male had gotten into the vehicle that [he] had seen earlier." (*Id.* at 16:6-10). Specifically, Officer Irvin testified, the male had gotten into the front passenger seat of the vehicle. (*Id.* at 16:12). As he approached the parking lot, Officer Irvin testified that he parked "just on the side of the mouth of the entrance [to the parking lot]," noting that "[t]here's only one way in and one way out." (*Id.* at 16:15-16).[1]

Officer Irvin exited his vehicle and approached the passenger side of the parked vehicle, at which point he viewed two individuals sitting inside. (*Id*. at 16:20-23). Officer Irvin testified that, at this juncture, he "knocked on the window or [. . .] made contact with the front passenger" who, it was later determined, was

---

[1] Defendant argues that Officer Irvin actually "pulled his Ford Explorer *into* the entrance of the parking lot" upon approaching, arguing that this supports his contention that a seizure occurred. (Doc. 47 at 3; 6) (emphasis added). We have reviewed the relevant exhibits addressing the position of Officer Irvin's vehicle, and it is an admittedly close call whether the exit from the parking lot was blocked. As will become apparent, however, we need not determine the exact position of Officer Irvin's vehicle, as we will assume for the purposes of this motion that Defendant was in fact seized by Officer Irvin. *See infra* p. 9-10. His motion nevertheless fails, however, because Officer Irvin had a "reasonable suspicion that criminal activity was afoot" when he approached the parked vehicle. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ("an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot").

3

the Defendant in the instant case. (*Id.* at 16:25-17:1). Mr. Woods lowered his window approximately three inches, at which point Officer Irvin testified that he informed the Defendant that he had made contact because Mr. Woods was "on private property." (*Id.* at 17:7-8). Officer Irvin also noted that he smelled the odor of burnt marijuana at that time. (*Id.* at 17:10-13). He then asked for identification from both the passenger and the driver and relayed their information over his radio to dispatch. (*Id.* at 18:3-9). Officer Irvin also noted that he realized he had interacted with Defendant Woods during a prior controlled buy. (*Id.* at 17:21-18:2).

    Officer Irvin was informed by dispatch that the driver of the vehicle had an active warrant for her arrest. (*Id.* at 18:12). Mr. Woods had no active warrants. (*Id.*). At this point, Officer Irvin testified, he decided to search the vehicle based upon "the odor of marijuana from the vehicle, [. . .] Mr. Woods only putting down the window three inches during my interaction, [and his statement that he] could prove that he lived there because his ID had his address on it [even though] the ID had a different address." (*Id.* at 18:14-19:1). Office Irvin called for backup to search the vehicle, to which Officers Inkrote and Batten responded. (*Id.* at 19:2-6). Once they arrived, Officer Irvin provided details about his interactions with the vehicle to that point, and Officer Inkrote arrested the driver on her outstanding warrants. (*Id.* at 19:7-19).

While that arrest was occurring, Officer Irvin asked Mr. Woods to step out of the vehicle. (*Id.* at 19:14-15). Officer Irvin patted down Mr. Woods and asked him to stand at the back of the vehicle with Officer Batten. (*Id.* at 19:15-19). Officer Irvin began to search the vehicle. (*Id.* at 19:19-20). Officer Irvin testified that he found a dark colored bag underneath the front passenger seat and, as he pulled it out, he saw a firearm. (*Id.* at 19:24). Officer Irvin attempted to inform his fellow officers of the presence of a firearm, at which point Mr. Woods tried to flee the scene. (*Id*. at 19:21-20:1). Mr. Woods was immediately tackled by Officer Batten and tased by Officer Irvin. (*Id.* at 20:14-18). Mr. Woods was promptly arrested and given his Miranda rights. (*Id.* at 20:19-21:7).

Now, Mr. Woods seeks to suppress that firearm and drugs that were also discovered by Officer Irvin during his search. (Doc. 47 at 5). He filed his Motion on March 1, 2021. (Doc. 31). He simultaneously filed a brief in support. (Doc. 32). We stayed the Government's response and scheduled an evidentiary hearing on March 16, 2021. (Doc. 35). We held an evidentiary hearing on April 19, 2021. (Doc. 41). The transcript of that hearing was filed on May 17, 2021. (Doc. 45). Thereafter, the Government filed their brief in opposition on June 7, 2021. (Doc. 46). Defendant Woods replied on June 28, 2021. (Doc. 47). The matter is thus ripe for our review.

## II. DISCUSSION

Defendant Woods argues that he was the subject of a seizure by Officer Irvin without any articulable reasonable suspicion, as is required by *Terry v. Ohio*. 392 U.S. 1, 19 (1968). As such, he asks us to suppress all evidence discovered by Officer Irvin as a result of his illegal seizure. (Doc. 32 at 5). In support thereof, Defendant argues that he was not "free to go when Officer Irvin waited for him to enter the car and then pulled into the entrance of the parking lot, thereby blocking the exit. (Doc. 32 at 6). In addition, Defendant argues that "[u]nfortunately, today, interactions between black men and police officers often do not end well. It is reasonable for a black man to believe that he must stay and comply with a police officer's requests and questions when approached under the circumstances which Officer Irvin approached Mr. Woods." (Doc. 47 at 6).

As such, Defendant Woods maintains, there was a seizure and Officer Irvin required a "reasonable, articulable suspicion that criminal activity [was] afoot." (Doc. 32 at 5 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000))). He argues that, while there may have been reasonable suspicion to seize the driver of the vehicle based upon Officer Irvin's testimony that he suspected a possible DUI or overdose, the same cannot be said for Defendant Woods. (Doc. 47 at 8). And indeed, Defendant claims, "upon approaching the car, [Officer Irvin] did not go to the drivers' side of the vehicle, and instead, went straight to Mr. Woods and

6

directed all of his questions towards him." (*Id.* at 8). While Defendant acknowledges that he violated Pennsylvania state law by trespassing on private property, he further argues that "it is clear from Officer Irvin's testimony that he was not concerned about cars being parked in the lot after hours and he was not investigating a trespass." (*Id.*).

Instead, Defendant argues, Officer Irvin's articulable suspicion *as it relates to Woods* is that he saw a black male crossing the street in a high crime area and it "crossed [his] mind that the person sitting in the car waiting could be waiting for a delivery of drugs instead of DUI or overdosed." (Doc. 47 at 9 (citing Doc. 45 at 40:4-6)). This is not enough, argues Defendant Woods, citing *United States v. Roberson*, which held that a presence in a high-crime area, without more, is not enough to engender a reasonable suspicion that criminal activity is afoot. (Doc. 47 at 9-10).

The Government disagrees, arguing that there was no seizure in the first place, let alone a lack of reasonable suspicion to conduct that seizure. (Doc. 46 at 7). They note that a "'seizure does not occur simply because a police officer approaches an individual and asks a few questions.' *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Even when officers 'have no basis for suspecting a particular individual, they may generally ask questions of that individual ... as long as the police do not convey a message that compliance with their requests is required.' *Id.*

at 435." (Doc. 46 at 8). The Government argues that police must use physical force or some show of authority to which a suspect submits before a seizure occurs. (*Id.* at 9 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991))).

Even assuming a seizure did occur, however, the Government further argues that such a seizure was reasonably based upon an articulable suspicion that criminal activity was afoot. The Government notes that "T[t]he reasonable suspicion standard requires more than a 'mere hunch,' but 'considerably less' and 'obviously less' information than probable cause. (Doc. 46 at 12 (citing *Navarette v. California*, 572 U.S. 393 (2014) (corroborated anonymous tip); Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000) (unprovoked flight in a high crime area when an officer approaches); *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir.2000))).

Here, the Government believes that the "totality of the circumstances" allowed Officer Irvin to reasonably believe that criminal activity was occurring, noting that Mr. Woods entered a private parking lot after hours and was violating state trespassing laws. (*Id.* at 13). Furthermore, the Government argues, "this community has had persistent problems with drug overdoses, and this locale has had persistent issues with drug trafficking, drug usage, and prostitution. So, when police observed the parking lights on the car, the car running, and the driver's seat reclined, they could reasonably infer that the occupant(s) were involved in conduct

beyond simple trespass." (*Id.*). Indeed, "[t]he hour of night (1:25 am) and the lot's proximity to a bar raise additional concerns of a driver being unable to operate a vehicle due to being under the influence of alcohol. Finally, Mr. Woods entry into the car -- after walking from a known problem location -- added to the suspicion" (*Id.*).

For the reasons that follow, we agree with the Defendant that a seizure did occur. Nevertheless, that seizure was supported but a reasonable suspicion of criminal activity and we will consequently deny the Motion. A seizure by law enforcement occurs when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas,* 538 U.S. 626, 629, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (internal citations omitted). Such a seizure does not occur until law enforcement officer use physical force *or* employ a show of authority to which a suspect submits. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). In deciding whether a seizure has occurred, the courts will consider whether there was a "blocking of exits." United States v. Crandell, 554 F.3d 79, 86–87 (3d Cir. 2009) (citing U.S. v. Drayton, 536 U.S. 194, 204 (2002)).

Here, we believe that it is arguable that Mr. Woods was not free to leave when Officer Irvin at least partially blocked the only entrance to the parking lot

9

with his patrol vehicle. We do not believe it likely that a reasonable person would have felt free to leave at this juncture, but nevertheless find that a seizure undoubtedly occurred by the time Officer Irvin approached the vehicle containing Mr. Woods and admittedly stood *in front of the passenger door*. (Doc. 45 at 16:25-17:1). Our review of the video footage of this encounter shows there was not room for Mr. Woods to physically leave the vehicle and walk away once Officer Irvin placed himself in front of the only egress. Officer Irvin also asked for Mr. Woods's identification and, while checking that identification, remained in the path of Mr. Woods's only exit. We find these circumstances sufficient to determine that Mr. Woods was seized by Officer Irvin.[2]

Assuming that Mr. Woods was seized when approached by Officer Irvin, we move to the next step of our analysis: determining whether that seizure was based upon reasonable suspicion that criminal activity was afoot. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). While reasonable suspicion is an "elusive concept," at a minimum "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006) (quoting *United States v. Cortez*, 449

---

[2] Defendant argues that he argues that it "is reasonable for a black man to believe that he must stay and comply with a police officer's requests and questions." (Doc. 47 at 6). We do not disagree and recognize the realities inherent in this argument. Nevertheless, we need not address it because we have already found, based upon the *objective* circumstances surrounding this interaction, that a reasonable person would not have felt free to leave.

10

U.S. 411, 417–18 (1981)). We consider the totality of the circumstances in evaluating whether there was reasonable suspicion, *id.* at 264–47, which ultimately "may be the result of any combination of one or several factors: specialized knowledge and investigative inferences (*United States v. Cortez* [449 U.S. 411 (1981)]), personal observation of suspicious behavior (*Terry v. Ohio* [392 U.S. 1 (1968)]), information from sources that have proven to be reliable, and information from sources that—while unknown to the police—prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip (*Alabama v. White* [496 U.S. 325 (1990)])." *United States v. Nelson*, 284 F.3d 472, 478 (3d. Cir. 2002).

Here, Defendant acknowledges that he was trespassing on private property in violation of Pa. C.S. §3503(b)(1)(ii). (Doc. 47 at 8). However, he argues that "it is clear from Officer Irvin's testimony that he was not concerned about cars being parked in the lot after hours and he was not investigating a trespass." (*Id.*). We disagree. Officer Irvin testified that his attention was first drawn to the Helf the Carpetman parking lot because there was a vehicle parked there with its parking lights on. (*Id.* at 13:2-6). Officer Irvin knew that the business was closed and had clear signage indicating that the parking lot was for customer use only. (*Id.* at 13:18-15:10). As such, he testified that he decided to turn his car around to "investigate what was going on with the person who had been laid back in the car

seat" of the trespassing vehicle. (*Id.* at 13:12-13).³ As he observed Mr. Woods trespass on the Helf the Carpetman parking lot as well, he decided to include him in this investigation as well. (*Id.*). ⁴

While Officer Irvin did testify that he was further motivated to approach the vehicle by other factors, including the time of night, his knowledge of the area as a drug trafficking hotspot, and the parking lot's location across the street from a bar, none of these are impermissible reasons for approaching an individual and conducting a seizure. True, as the Defendant notes, walking across the street in a high crime area is *not* enough to conduct a seizure. But it is clear that Officer Irvin's interaction with the Defendant was based on much more here. He actually observed Mr. Woods violate state law, he was concerned about the status of an individual in the car entered by Mr. Woods, and he observed indicia of drug

---

³ Defendant argues that these circumstances, at most, gave rise to a reasonable suspicion that the *driver* of the vehicle was engaged in criminal activity, but that Officer Irvin "had nothing more than a 'hunch' that something was awry" with regards to Mr. Woods. (Doc. 47 at 10). Again, we disagree. Officer Irvin observed Mr. Woods enter private property after business hours and approach a vehicle that had already aroused his suspicions for reasons already discussed. This *particularized* information provides far more reasonable suspicion that mere presence in a high-crime area, and we believe that the seizure of Mr. Woods was consequently justified.

⁴ As Defendant notes, there were many other cars parked in the Helf the Carpetman parking lot that night. Defendant argues that the fact that Officer Irvin did not ticket those vehicles indicates that he was not really interested in investigating the trespass. (Doc. 47 at 8). But it is clear from Officer Irvin's testimony that only *one* car was occupied at the time Officer Irvin approached: that containing Mr. Woods. (Doc. 45 at 13:2-6). Officer Irvin testified that he was motivated to investigate by a *combination* of factors, only one of which was trespassing. The other vehicles on the lot do not have appeared to present any of the other circumstances that motivated Officer Irvin's approach, and so we are unconcerned that Officer Irvin focused his attention on the car containing Mr. Woods.

activity that aligned with his own prior experiences and knowledge of the area. (Doc. 45 at 15:19-16:1). Any one of these circumstances *alone* may well have not been sufficient to create the requisite reasonable suspicion. But when taken together, as they must be, these factors indicate that Officer Irvin had a reasonable suspicion that criminal activity was afoot. Consequently, while we find that Defendant Woods was seized by Officer Irvin, we also find that such seizure was amply justified by a reasonable suspicion of criminal activity.

### III. CONCLUSION

For the reasons stated above, we will deny the Defendant's Motion to Suppress. (Doc. 31).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Suppress, (Doc. 31), is **DENIED**;

2. This matter is hereby **SCHEDULED** for jury trial on **August 2, 2021 at 9:30 a.m.** in a courtroom to be determined, Harrisburg Federal Courthouse;

3. The period of time from the signing of this Order to the rescheduled date of trial shall be excluded under the Speedy Trial Act, United States Code, 18 U.S.C. § 3161(h)(7); and

4. Counsel are considered attached for trial.

                                <u>s/John E. Jones III</u>
                                John E. Jones III, Chief Judge
                                United States District Court
                                Middle District of Pennsylvania